1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    JOSEPHINE ELVA MCKELLIPS,                      CASE NO. C13-5096MJP

11                        Plaintiff,                 ORDER DENYING DEFENDANT'S
                                                     MOTION TO STAY AND
12          v.                                       GRANTING PLAINTIFF'S MOTION
                                                     TO FILE SECOND AMENDED
13    FRANCISCAN HEALTH SYSTEM d/b/a                 COMPLAINT
      ST. ANTHONY HOSPITAL,
14
                          Defendant.
15

16

17         THIS MATTER comes before the Court on Defendant's motion to stay this action (Dkt.

18   No. 11), and Plaintiff's motion for leave to file a second amended complaint.  (Dkt. No. 12.)

19   Having reviewed the motions, responses (Dkt. Nos. 14, 21), replies (Dkt. Nos. 20, 22), and all

20   related documents, the Court DENIES Defendant's motion and GRANTS Plaintiff's motion.

                                        **Background**
21
           In September 2011, Plaintiff Josephine McKellips began working for Defendant
22
     Franciscan Health System.  (Dkt. No. 1 at 6-7.)  A month into her new position, Plaintiff
23
     discovered she was pregnant.  (Id. at 8.)  Plaintiff asserts she received only positive performance
24

1  evaluations during this time.  (Id. at 6-8.)  In January 2012, Plaintiff informed Defendant of her

2  pregnancy.  (Id. at 8.)

3       In March 2012, Plaintiff began experiencing complications with her pregnancy,

4  specifically immobilizing pain in her pelvis.  (Id.)  Plaintiff asserts the pain from her inflamed

5  pelvis made her late to work multiple times, and that Defendant disciplined her for it.  (Id. at 9.)

6  Plaintiff claims her supervisor repeatedly urged her to resign or reduce her working hours, but

7  Plaintiff refused.  (Id.)

8       Plaintiff told Defendant her doctor recommended taking maternity leave two months

9  early and getting accommodations at work to reduce her pelvic inflammation.  (Id. at 11.)

10  Plaintiff asserts she requested the accommodation of a closer parking spot to reduce her walking

11  distance each day, but Defendant refused.  (Id.)  On May 25, 2012, approximately five days

12  before Plaintiff's early maternity leave was scheduled to begin, Defendant terminated Plaintiff.

13  (Id. at 11.)

14       On October 26, 2012, Plaintiff filed suit in King County Superior Court claiming

15  disability, gender, and pregnancy discrimination in violation of the Washington Law Against

16  Discrimination ("WLAD") and Title VII of the 1964 Civil Rights Act.  RCW 49.60; 42 U.S.C.

17  2000(e); (Dkt. No. 1 at 23).  Defendant removed the case to this Court on February 12, 2013.

18  (Dkt. No. 4 at 1.)

19       Defendant moves to stay this action pending the Washington Supreme Court's

20  disposition of questions certified in Ockletree v. Franciscan Health System, Case No. C11-

21  5836RBL, Dkt. No. 63 at 4 (W.D. Wash. 2012), because it may exempt Defendant from liability

22  under the WLAD.  (Dkt. No. 11 at 1.)  In Ockletree, Plaintiff, a security officer employed by

23  Franciscan Health System ("FHS"), was terminated after a stroke impaired his ability to use his

24

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 2

1   left arm.  (Id.)  Ockletree sued FHS, claiming his termination was the result of discrimination

2   based on race or disability in violation of the WLAD.  (Id.)  FHS claims the WLAD expressly

3   exempts Defendant because it excludes religious organizations from its definition of an

4   "employer."  RCW 49.60.040(11).  In relevant part, it states:

> Employer includes any person acting in the interest of an employer, directly or
> indirectly, who employs eight or more persons, and does not include any religious
> or sectarian organization not organized for private profit.

7   RCW 49.60.040(11).  Judge Leighton certified the question of whether the WLAD's exemption

8   for religious non-profits unconstitutionally violates the Washington State Constitution's

9   privileges and immunities clause (Article 1, § 12) and its religious freedom clause (Article 1, §

10  11) to the Washington Supreme Court.  (Dkt. No. 63 at 4.)  He also asked, if the WLAD

11  exemption for religious nonprofits is not generally unconstitutional, is it unconstitutional when a

12  religious non-profit discriminates against an individual for a reason unrelated to religion.  (Id.)

13  Plaintiff moves to amend her complaint, for the second time, 55 days after filing her first

14  amended complaint, to add a federal claim under the Americans with Disabilities Act ("ADA"),

15  42 U.S.C. § 12101.  (Dkt. No. 13 at 1-2.)

**Discussion**

I.       Motion To Stay

        Defendant argues: (1) the Washington Supreme Court's decision in Ockletree will

determine the viability of Plaintiff's WLAD claim; (2) a stay will promote judicial economy by

restricting the scope of discovery and litigation; (3) Plaintiff will not be prejudiced or damaged

by a brief stay; and (4) Defendant will suffer financial hardship by prematurely investigating,

defending, and litigating a potentially invalid claim.  (Dkt. No. 11 at 3-4.)  Plaintiff responds

staying this action will: (1) reduce judicial efficiency because the Washington Supreme Court's

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 3

1    decision in <u>Ockletree</u> will not affect Plaintiff's federal claims; (2) not affect the scope of

2    discovery because Plaintiff's federal claims require investigation of the same facts as her state

3    claims; and (3) prejudice Plaintiff's ability to secure evidence and impose undue hardship by

4    forcing her to wait for financial recovery.  (Dkt. No. 14 at 4-5.)

5        A district court may exercise its discretion "to control the disposition of the causes on its

6    docket in a manner which will promote economy of time and effort for itself, for counsel, and for

7    litigants." <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962).  "Where it is proposed that a

8    pending proceeding be stayed, the competing interests which will be affected by the granting or

9    refusal to grant a stay must be weighed."  <u>Id</u>.  In deciding whether to stay a case, the Court may

10    consider: (1) the possible damage which may result from the granting of a stay; (2) the hardship

11    or inequity which a party may suffer in being required to go forward; and (3) the orderly course

12    of justice measured in terms of the simplifying or complicating of issues, proof, and questions of

13    law which could be expected to result from a stay.  <u>Id.</u> (citing <u>Landis v. N. Am. Co.</u>, 299 U.S.

14    248, 254-55 (1936)).

15        First, granting a stay would cause Plaintiff to wait an indeterminate period for resolution

16    of the <u>Ockletree</u> case and possibly suffer financial damage in the interim.  (Dkt. No. 14 at 4.)

17    Plaintiff asserts a stay would strain her finances because she will have to wait longer to receive

18    compensation.  (<u>Id.</u>)  Further, because the accuracy of testimony and the availability of witnesses

19    may diminish with time, this delay could endanger evidence preservation.  <u>See</u> <u>United States v.</u>

20    <u>Mays</u>, 549 F.2d 670, 680 (9th Cir. 1977).

21        Second, Defendant would not suffer significant hardship in proceeding with this case.

22    Plaintiff's current Title VII claims stem from the same nucleus of operative facts as her state

23    WLAD claim.  (Dkt. No. 14 at 4.)  To establish a claim under both the WLAD and the ADA,

24

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 4

1   Plaintiff must prove she: (1) has an impairment or disability; (2) was qualified to perform the

2   job; (3) gave her employer notice of her disability and its limitations; (4) and upon notice, the

3   employer failed to adopt measures to accommodate the disability.  Roeber v. Dowty Aero., 116

4   Wn. App. 127, 139 (2003); Sanders v. Arneson, 91 F.3d 1351, 1353 (9th Cir. 1996).  To prove

5   these elements Plaintiff will likely need to request the same documents; interview the same

6   witnesses, and retain the same experts.  Proceeding with this matter will not unreasonably extend

7   the scope of discovery or cause Defendant to accrue additional costs because both actions arise

8   from the same incident: the termination of Plaintiff's employment.

9        To prove her Title VII claim, Plaintiff must prove the additional elements that: (1) she

10  belongs to a protected class; (2) she suffered an adverse employment action; and (3) a similarly

11  situated employee who does not belong to the protected class was treated more favorably.

12  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  These differences alone do not

13  expand the scope and cost of discovery enough to warrant a stay.

14       Third, staying this action would not aid judicial economy.  Although the Washington

15  Supreme Court's decision in Ockletree may absolve Defendant of liability under the WLAD,

16  Defendant must nevertheless contend with Plaintiff's federal claims.  (Dkt. No. 14 at 4.)

17  Because Plaintiff's federal claims and state claims require investigation of the same facts, a stay

18  would not aid judicial economy.  (Id.)

19  II.      Motion for Leave to File Second Amended Complaint

20       Plaintiff moves to amend her complaint to include a disability discrimination claim under

21  the ADA. 42 U.S.C. § 12101; (Dkt. No. 12 at 1.)  Defendant asks the Court to deny Plaintiff's

22  request as futile because the ADA does not cover pregnancy in its definition of a disability.

23  (Dkt. No. 21 at 1.)

24

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 5

1        An individual is "disabled" under the ADA if she (1) has an actual disability that

2  substantially limits one or more major life activities, (2) has a "record of" such an impairment, or

3  (3) her employer regards her as having such an impairment.  42 U.S.C. § 12102(1); Kaplan v.

4  City of North Las Vegas, 323 F.3d 1226, 1231 (9th Cir. 2003).  Plaintiff argues her pregnancy-

5  related pelvic pain constitutes a disability because it substantially limits her ability to walk, a

6  major life activity.  42 U.S.C. § 12102(2); (Dkt. No. 1 at 31.)

7        The Ninth Circuit has yet to rule on whether pregnancy and related complications qualify

8  as disabilities under the ADA.  The interpretive guidance accompanying the ADA regulations

9  state "temporary, non-chronic impairments of short duration, with little or no long term or

10  permanent impact, are usually not disabilities."  29 C.F.R. Pt. 1630, App. § 1630.2(j) at 339.

11  Accordingly, courts have concluded "pregnancy and related medical conditions do not, absent

12  unusual circumstances, constitute a [disability] under the ADA."  LaCoparra v. Pergament Home

13  Centers, Inc., 982 F. Supp. 213, 228 (S.D. N.Y. 1997) (quoting Villarreal v. J.E. Merit

14  Constructors, Inc., 895 F. Supp. 149, 152 (S.D. Tex. 1995)); Gudenkauf v. Stauffer

15  Communications, Inc., 922 F. Supp. 465, 474 (D. Kan. 1996) (to qualify under the ADA,

16  pregnancy must be "unusual or abnormal" and complications must be "outside the normal

17  range").

18        Facts demonstrating a departure from a normal pregnancy make a finding of disability

19  under the ADA more likely.  Patterson v. Xerox Corp., 901 F. Supp. 274 (N.D. Ill. 1995)

20  (plaintiff's alleged disability of pregnancy-related back pain was sufficient to survive dismissal);

21  see also Hogan v. Ogden, No. CV-06-5078, 2008 WL 2954245 (E.D. Wash. July 30, 2008).  In

22  Hogan, Plaintiff's cervix dilated eight weeks early and she went into labor five weeks early.  Id.

23  at 6.  The Court held that because pre-term labor and bed rest are not a function of a normal

24

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 6

1 | pregnancy, the question of whether Plaintiff's complications constitute a disability under the

2 | ADA was one for the jury.  Id. at 14.

3 |     Here, Defendant has failed to prove Plaintiff's claim under the ADA is futile.  Plaintiff

4 | alleges she suffered severe pelvic inflammation and immobilizing pain.  (Dkt. No. 1 at 31.)

5 | Further, Plaintiff alleges a doctor's note advised her to take maternity leave two months early

6 | and to seek accommodations at work.  (Dkt. No. 1 at 34.)

7 |     The severity, duration, and impact of a pregnancy-related medical condition are factual

8 | considerations that inform coverage under the ADA.  29 C.F.R. Pt. 1630.  Because pregnancy-

9 | related complications or abnormal pregnancies may, at times, merit protection under the ADA,

10 | the Defendant has failed to prove Plaintiff's ADA claim futile as a matter of law.  See Serednyj

11 | v. Beverly Healthcare, LLC, 656 F.3d 540, 553-54 (7th Cir. 2011) (holding plaintiff's ADA

12 | claim fails as a matter of law because her pregnancy-related complications did not substantially

13 | limit her major life activities of reproduction and lifting, as required to qualify as "disabled"

14 | under ADA).

15 |     The Court GRANTS Plaintiff's request to amend her complaint to include an ADA claim.

16 | **Conclusion**

17 |     Because Plaintiff's federal claims require investigation of the same facts as her state law

18 | claims, the Court DENIES Defendant's motion to stay this case.  Because Defendant has failed

19 | prove Plaintiff's pregnancy-related ADA claim futile, the Court GRANTS Plaintiff's motion to

20 | amend her complaint.

21 |     Dated this 13th day of May, 2013.

22 |

23 |                                     Marsha J. Pechman

24 |                                     United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO
STAY AND GRANTING PLAINTIFF'S MOTION
TO FILE SECOND AMENDED COMPLAINT- 7